**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

BLUE MOON MEDIA GROUP, INC.,

                      Plaintiff,

        - against -

PATRICIA FIELD,

                      Defendant.

----------------------------------------------------------X

                                 **REPORT AND**
                                 **RECOMMENDATION**

                                 CV 08-1000 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      In a Report and Recommendation dated March 31, 2010, this Court recommended to the Hon. Denis Hurley that Defendant Patricia Field's ("Field" or "Defendant") motion for a default judgment be granted and that (1) a default judgment be entered against Plaintiff Blue Moon Media Group, Inc. (" Blue Moon" or "Plaintiff") on Defendant's counterclaims, including Defendant's claim for injunctive relief, barring Plaintiff from using, reproducing or displaying Ms. Field's photographs in any form; and (2) a hearing be held on the issue of damages. *See* DE 53. Thereafter, Judge Hurley adopted the Report and Recommendation and dismissed the claims of Plaintiff Blue Moon, pursuant to Fed. R. Civ. P. 41(b), for failure to prosecute and further granted and entered a default judgment in favor of the Defendant on her counterclaims. *See* DE 54. With regard to the issue of damages, Judge Hurley referred the matter to me to conduct a hearing on damages and to prepare a report and recommendation as to what damages, if any, should be awarded. *Id*.

      In preparation for the Inquest, I directed Defendant's counsel to provide this Court with (1) any additional documentation supporting the claims for damages, and (2) any legal authority Defendant was relying upon to support each category of damages claimed in light of the concerns

expressed in the March 31, 2010 Report and Recommendation regarding the calculation of damages. *See* Electronic Order of April 24, 2010. Defendant's counsel requested an extension of time until June 17, 2010 in which to file the additional documentation and supporting legal authority [DE 55] and that motion was granted. *See* DE 56. The damages inquest was held on June 30, 2010. Defendant's counsel stated on the record during the hearing that she served the Plaintiff Blue Moon with the Order which notified the parties of the Inquest. *See* Transcript of the June 30, 2010 Damages Inquest at 10.[1] The notice was served on the Secretary of State and by mail to the post office box which is the last known address for Blue Moon. Defendant's counsel noted that the mailing to Blue Moon was returned to her as had been the case with all recent attempts to serve documents to that address. *Id*. However, Defendant's counsel had previously filed an Affidavit of Service confirming that this Court's Order directing the Inquest had been served "upon Blue Moon Media Group, Inc. by delivering to and leaving with Donna Christie an agent of the Secretary of State, of the State of New York . . ." DE 58.

At the conclusion of the Inquest, the Court reserved its decision. The following findings constitute this Court's Report and Recommendation to Judge Hurley on the counterclaim damages.

I.    **BACKGROUND**

The facts of this case are set forth at some length in the March 31, 2010 Report and Recommendation [DE 53] and will not be repeated here, except as they apply specifically to the issue of damages. In her Answer and Counterclaims (hereafter referred to as "Ans. ¶ __"), Field

---

[1]    All subsequent references to the transcript of the June 30, 2010 Damages Inquest are cited as "Inq. Tr. at ___."

asserted the following counterclaims: (1) breach of contract (failure to give visible credit for Defendant's photographs used in the October 2007 issue of VOX Magazine and in the Hamptons International Film Festival tent); (2) breach of contract (failure to give copyright attribution for the referenced photos); (3) breach of contract (failure to provide full-page advertisement in VOX Magazine); (4) breach of contract (failure to provide a gallery exhibition); (5) breach of contract (failure to return personal property to the Defendant); (6) breach of contract (unauthorized use of photographs on VOX website); (7) replevin; (8) copyright claim; (9) violation of Digital Millennium Copyright Act; (10) injunctive relief; and (10) attorneys' fees. *See* DE 4.

Field has been engaged in the profession of commercial photography for 45 years. Inq. Tr. at 6; Ans. ¶ 47. Among other projects, she has photographed national ads for Elizabeth Arden, done covers for Ms. Magazine, and completed editorial work for New York Magazine and Connoisseur Magazine. Inq. Tr. at 7. In addition, she has photographed film festivals and premieres, including the Independent Feature Project in New York City, the Sundance Film Festival in Utah and the Hamptons International Film Festival in East Hampton, New York. Inq. Tr. at 7; Ans. ¶ 48. In 1993, she became the official photographer for the Hamptons International Film Festival when the festival first began Inq. Tr. at 8; Ans. ¶ 48. She served in that role as official photographer for the Hamptons International Film Festival again in 1994, 1995, 1999, and 2000. *Id.* Field retained the copyright and original negatives to all of the photographs that she took at the Hamptons International Film Festival for those years. Ans. ¶ 49.

At the times relevant to this action, VOX Magazine was a local Hamptons publication that was wholly owned by Plaintiff Blue Moon. Ans. ¶ 50. VOX was a corporate sponsor of the Hamptons International Film Festival and, in conjunction with its sponsorship, VOX published

an issue in October 2007 featuring photographs of the Hamptons International Film Festival through the years.  Because Field was the official photographer and the copyright owner of the official photographs for the festival in 1993, 1994, 1995, 1999 and 2000, Blue Moon sought to use Field's photographs in October 2007 issue of VOX.  Ans. ¶ 51.   To accomplish that goal, VOX and Field entered into an agreement ("the Agreement") in August of 2007.  Inq. Tr. at 7 and Ex. 2; Ans. ¶ 52.  That one-page Agreement was drawn up by Field and signed by her as well as by Brennan Daily, Creative Director at VOX, on August 31, 2007.  Inq. Ex. 2.

In the Agreement, Field granted VOX the exclusive one-time rights to use her photographic archives of the festival for VOX's October 2007 issue.   Inq. Tr. at 9; Ans. ¶ 52. According to Field, she was going to supply VOX with access to the photographs from the Hamptons film festivals in exchange for a number of items.  Inq. Tr. at 9.  By the express terms of the Agreement, VOX's right to use Field's photographs expired upon the publication of the November 2007 issue of VOX.   Ans. ¶ 52.  Although Field provided VOX with the Hampton International Film Festival's photographic archives and complied with her obligations under the Agreement, VOX failed to fulfill its obligations to Field.  Ans. ¶ 53.

## II.   DISCUSSION

### A.    Default and Liability

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true.  *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)); *BMG Music v. Pena*, No. 05-CV-2310, 2007 WL 2089367,

at *2 (E.D.N.Y. July 19, 2007). "A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which it claims based and caused injuries as alleged." *See J & J Sports Productions, Inc. v. Bernal,* No. CV 09-3745, 2010 WL 3463156, at *2 (E.D.N.Y. July 28, 2010) (citing *Greyhound*, 973 F.2d at 159). "To make out a viable claim for breach of contract, a 'complaint need only allege (1) the existence of an agreement, (2) good performance of the contract by the plaintiff, (3) breach of contract by the Defendant, and (4) damages.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 160, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

Defendant/counterclaimant Field has alleged that the parties entered into an agreement giving VOX/Blue Moon exclusive one-time rights to Field's photo archives in exchange for a $3000 payment and four other items and that Field provided the access and photographs. Although Field received $3000, she did not receive any of the other four items set forth in the Agreement. The Court therefore finds that the facts asserted by the Defendant/counterclaimant state a cause of action for breach of contract.

## B. Damages

"Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F.Supp.2d 156, 160 (E.D.N.Y. 2008) (citing *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Plaintiff, therefore, must still prove damages. *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d at 155. To that end, the Court must "conduct an inquiry to ascertain the amount of damages *with reasonable certainty*." *Finkel,* 543 F. Supp.

2d at 160 (emphasis supplied).  It is axiomatic that "the court must ensure that there is a basis for the damages specified in a default judgment . . ." *Fustok v. Conticommodity Servs., Inc.*, 122 F.R.D. 151, 156 (S.D.N.Y. 1988).  "Plaintiff is charged with the burden of establishing its entitlement to recovery." *E-Centurion, Inc. v. Long Beach Company,* No. CV 06-5913, 2007 WL 2815689, at *1 (E.D.N.Y. Sept. 25, 2007) (citing *Clague v. Bednarski*, 105 F.R.D. 552 (E.D.N.Y. 1985).

"The general rule for measuring damages for breach of contract has long been settled.  It is the amount necessary to put the plaintiff in the same economic position he would have been in had the Defendant fulfilled his contract." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995) (internal quotations and citations omitted); *Boyce v. Soundview Tech Group, Inc.*, 464 F.3d 376, 384 (2d Cir. 2006).  When it is certain that damages "have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach.  A person violating his contract should not be permitted entirely to escape liability because the amount of the damage which he has caused is uncertain." *Wakeman v. Wheeler & Wilson Mfg. Co*., 56 Sickels 205, 209, 101 N.Y. 205, 4 N.E. 264, 266 (1886).  "[T]he burden of uncertainty as to the amount of damage is upon the wrongdoer ...." *Contemporary Mission, Inc. v. Famous Music Corp*., 557 F.2d 918, 926 (2d Cir.1977) (applying New York law).

Therefore, the only question remaining is whether Plaintiff has provided adequate support for the relief she seeks. *Greyhound Exhibitgroup, Inc*., 973 F.2d at 158.  The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159.  In addition, the moving party is entitled to all reasonable

inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether detailed affidavits or documentary evidence are sufficient. *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1989). "The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" *LaBarbera v. Les Sub-Surface Plumbing, Inc.,* No. 06-CV-3343, 2008 WL 906695, at *3 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997)). In this instance, a formal hearing was necessary to delve into the categories of damages and the support for each.

In support of the Motion for Default Judgment, Defendant/counterclaimant's counsel, Emily Abrahams, Esq., submitted the June 17, 2010 affidavit of her client, Patricia Field [DE 60] ("Field Aff."), with 17 exhibits attached, as well as her own Declaration dated June 17, 2010 [DE 61] ("Abrahams Decl.") with exhibits, and a memorandum of law [DE 59].

As noted above, the formal inquest took place on June 30, 2010. Defendant/ counterclaimant Field testified at the hearing. Field relied primarily upon her own testimony as well as the exhibits submitted as underlying documentation for her estimate of damages. The Court now turns to a breakdown of the damages asserted by Field. For the record, the Court notes that the order of the hearing did not follow precisely the order of the counterclaims asserted in the Answer. Consequently, the counterclaim damages as set forth below follow the order in

which they were presented at the Inquest.

### *1.    Third Counterclaim – Failure to Provide Full-Page Advertisement in VOX Mmagazine*

The August 31, 2007 Agreement entered into by Brennan Daily, Creative Director at VOX, and Patricia Field states that "In addition to the payment of $3000.00, VOX will give Pat Field:  Full-page color ad in VOX Magazine, designed by VOX staff. . ."  Inq. Ex. 2.  At the inquest, Field testified that VOX/Blue Moon failed to provide her with the full-page advertisement as called for in the Agreement.  Inq. Tr. at 10-11.  The amount of damages claimed by Field for this breach of the Agreement is $6,245.00.   Field arrived at this amount based upon the rates VOX published on their website.  Inq. Tr. at 10.  In support of her request, Field provided a snapshot of the VOX website listing the rates as of March 1, 2008.  *See* Inq. Ex. 3. This date is within a reasonable time frame of the August 31, 2007 Agreement as well as the actual October 2007 issue of VOX which contained Field's photographs.  The rate for a full-page ad being run a single time is listed as $5,295.00.  Inq. Ex. 3.  In addition, Exhibit 3 also shows an accompanying fee of $950.00 for designing and creating the ad.  *Id*.  Field confirmed these amounts in her testimony.  Inq. Tr. at 10-11.  Adding these two amounts together yields a sum of $6,245.00.  Based upon the testimony as well as the underlying exhibit in support of this element of damages, I am respectfully recommending to Judge Hurley that Field be awarded $6,245.00 as the dollar figure equivalent to an ad in VOX Magazine as set forth in the Agreement and which was never provided by VOX/Blue Moon.

### *2.    Fourth Counterclaim – Failure to Provide a Gallery Show*

The contract between VOX and Field also provides that in addition to the $3,000 payment, VOX will provide

> A Show at a Reputable Gallery of HIFF Photos and Pat Field's "New Works" Curated by the VOX Team with a delicious Opening Party. All supplies, such as paper, ink, dry-mounting, mattes, frames, large size prints will be "traded-out" to vendors to cover all expenses. There will also be appropriate PR and ads announcing the Show. Ideally the Show will be October 2007, if not  –  then in the summer of 2008 for 2 weekends.

Inq. Ex. 2. Field testified that Blue Moon never provided the gallery show or any of the associated components. Blue Moon's contractual obligation to provide Field with a gallery show explicitly called for the provision of advertising, production of archival prints and mattes, frames, transporting photographs and catering for an opening party. Field Aff. ¶ 43. The show was supposed to exhibit 20 photographs from the film festival that were in the October 2007 issue of VOX , along with 20 of Field's new works. Inq. Tr. at 12.

With regard to the first component, printed photographs, Field testified that she has her photographs printed at Reed's Photo Shop in Amagansett, New York and that the photographs have to be "archival quality and exhibit top quality." Inq. Tr. at 13; Field Aff. ¶ 40. At the gallery show, Field was to exhibit 16 x 20 glossy prints using Lex Jet, a paper and ink process. Inq. Tr. at 14. The cost per print using the Lex Jet process at Reed's is $65. As supporting documentation, Field provided the screenshot from Reed's website showing a cost of $65 for a 16 x 20 Lex Jet print. Inq. Ex. 4. For 40 photographs, the cost for the prints at $65 per print is $2,600. Inq. Tr. at 15.

Field further testified that she has her photographs matted and framed at DJS Studio in East Hampton. The matting and framing must be done on archival acid-free paper and backings. Inq. Tr. at 16. Field obtained an estimate from VJS for the matting and framing of 16 x 20 photographs and noted that everything is custom made at VJS. That estimate from VJS was

entered into evidence as Exhibit 5 at the Inquest. The cost per photograph for an acid-free matte with acid-free foam core as well as fitting and wiring is $103.28. For 40 photographs, the total cost is $4,131.20. Inq. Ex. 5; Inq. Tr. at 17. Field testified that the estimate was obtained several months before the Inquest and that the pricing had not gone down between 2008 and 2010, although she could not state with certainty whether the price had gone up to any significant degree. Inq. Tr. at 17-18.

As to advertising costs, Field testified that the gallery show would have been advertised in VOX Magazine and she had been discussing a quarter page ad with the VOX representatives. A quarter page ad in VOX as of March 2008 was $1,710. In addition, there was an attendant cost of $350 for design charges. Those figures were confirmed by the previous snapshot of the VOX website listing the rates as of March 1, 2008, for a total of $2,060 for advertising. *See* Inq. Ex. 3.

Field contacted a moving company to determine the cost involved in transporting 40 glass framed photographs to and from the gallery show. B & N Moving Company in East Hampton quoted a price for getting the photographs to the gallery and then picking them up from the gallery. The cost involved seven hours of time at a rate of $110 per hour, for a total of $770. Inq. Tr. at 19.

The contract between VOX/Blue Moon and Field called for an opening party inviting the people attending the Hampton Film Festival to the gallery show. Based on the number of attendees at the Film Festival, Field testified that there was a reasonable expectation of at least 100 people for the opening party. Field consulted with many friends who have had openings who provided her with estimates of catering costs, in the range of $30-$50 per person. Inq. Tr. at 21. In support of this category of damages, Field provided a copy of an invoice obtained from VOX

Magazine's attorney showing the cost for a cocktail party that VOX conducted at the Hampton Film Festival. The catering cost incurred by VOX and reflected on this October 22, 2007 invoice from Muse Catering is $4716.38. *See* Inq. Ex. 6. Field seeks the sum of $3,000 - $5000 for this item of damages. It is this Court's position that the $3,000 amount is appropriate under these circumstances.

When reviewing the sufficiency of the evidence of damages, the Court is "guided by the principle that if a [party] has shown it more likely than not that it has suffered damages, the amount of damages need only be proved with reasonable certainty." *Indu-Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 496 (2d Cir. 1995) (citing *W.L. Hailey & Co. v. County of Niagara*, 388 F.2d 746, 753 (2d Cir. 1967)) (collecting New York cases). It has long been established under New York law that "[W]hen it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach." *Wakeman v. Wheeler & Wilson Mfg. Co.*, 101 N.Y. 205, 209, 4 N.E. 264 (1886). "The wrongdoer must shoulder the burden of the uncertainty regarding the amount of damages." *Id*.

The total damages claimed for the breach of contract in not providing the Gallery Show is $12,561.20 ($2,600 + $4,131.20 + $2,060 + $770 + $3,000). Based on the foregoing case law regarding damages as well as Field's testimony and the documentary support entered as exhibits at the Inquest, I respectfully recommend to Judge Hurley that Field be awarded damages in the sum of $12,561.20 on VOX/Blue Moon's breach of contract in not providing the Gallery Show.

### 3.    *Eighth Counterclaim – Copyright Infringement*

The Defendant seeks statutory damages for the infringement of 142 photographs included in the October 2007 issue of VOX Magazine for which Defendant has registered her copyrights. By virtue of Blue Moon's default, the allegations as they pertain to liability are deemed true. Consequently, VOX/Moon is liable for copyright infringement. Where a claim of copyright infringement has been found, the copyright holder may elect between two measures of damages, namely, actual damages and profits or statutory damages for "all infringements . . . with respect to any one work." 17 U.S.C. § 504(b). The claimant may elect to receive statutory damages at any time before the final judgment. 17 U.S.C. § 504(c)(1). Field seeks statutory damages here. Pursuant to the copyright statute, damages range between $750 and $30,000 each infringed work. *Id*. It is also within the Court's discretion to award up to $150,000 per infringed work where the infringement is willful. 17 U.S.C. § 504(c)(2).

As the Second Circuit noted in *Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*, 996 F.2d 1366, 1281 (2d Cir. 1993), "[t]he current statute shifts the unit of damages inquiry from number of infringements to number of works." Under this reasoning, Field is entitled to damages for each of her individual works. *Id.* Pursuant to the contract between Field and VOX/Blue Moon, Field provided photographs for use in VOX Magazine and a little more than 150 of those photographs were published. Inq. Tr. at 24. According to the written agreement, VOX received "Exclusive One-Time Rights to Pat Field's Photo Archives of photographs of the Hamptons International Film Festival with the October issue of VOX Magazine until the November 2007 issue of VOX," in exchange for, among other things, a payment to Field of $3000. Inq. Ex. 2. Field received the $3000 payment and is not claiming that amount as an element of damages.

At the Inquest, Field identified Exhibits 1A through 1E, each of which is a compilation of Field's applications to the United States Copyright Office for the photographs that she took at the Hamptons International Film Festival for the years 1993, 1994, 1995, 1999 and 2000 – years during which Field served as the official photographer for the Festival. Inq. Exs. 1A - 1E. Field testified that her photographs of the Hamptons International Film Festival were also published in brochures for the Festival and the Festival paid her for the use of the photographs in their brochures. Inq. Tr. at 26. The payments ranged from $300 per photo up to $500 per photo. *Id*. Field acknowledged that the amount she received for each of the photographs she gave to VOX, by contrast, was approximately $18. Inq. Tr. at 27. According to Field, she substantially discounted her rate because she was going to receive a gallery show and a full-page ad in exchange under the terms of the agreement. *Id*.

VOX also used Field's photographs on its website in the Fall of 2007 without any authorization from Field. Inq. Tr. at 28. She asked VOX to remove the photographs and called an attorney.[2] *Id*. The attorney, Patricia Weiss, Esq., wrote a cease and desist letter to VOX/Blue Moon on November 13, 2007 asking them to remove the photographs from the website, but it was some time before that was done. *See* Inq. Ex. 7. That demand was reiterated by letter from Attorney Weiss to VOX's attorney on February 11, 2008. *See* Inq. Ex. 8. Defendant Field asserts that this is further evidence of the willfulness of VOX/Blue Moon's infringement.

---

[2]     Counterclaimant Field states that VOX/Blue Moon also violated the Digital Millennium Copyright Act ("DMCA") through its unauthorized posting of Field's photographs on its website. However, as Field's counsel acknowledges, damages should not be awarded under both the Copyright Act and the DMCA for infringement of the same works. *Tu v. TAD Sys. Tech., Inc.*, No. 08-CV-3822, 2009 WL 2905780, at *5 (E.D.N.Y. Sept. 10, 2009). The Court may nonetheless take into account the website postings in regard to a final damages assessment.

Although courts have wide discretion in computing an award of statutory damages, the following factors are to be considered in reaching a determination: (1) the expenses saved and the profits gained by the infringer; (2) the revenues lost by the copyright holder; (3) the value of the copyright; (4) the deterrent effect on others besides the infringer; (5) whether the infringer's conduct was innocent or willful; (6) whether an infringer has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the infringer. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986).

In light of the Plaintiff's default in this action, this Court has almost no evidence *to* evaluate the first three *Fitzgerald* factors. "Yet, the failure to establish actual damages does not impair this Court's ability to devise a proper statutory award." *Tu v. TAD Sys. Tech., Inc*., 2009 WL 2905780, at *6 (citing *Entral Group Int'l LLC v. Honey Cafe on 5th, Inc*., No. 05 CV-2290, 2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006)) (awarding $150,000 for Defendants' willful infringement although neither the plaintiff's losses nor the Defendants' profits were established).

"An infringement is willful if the [infringer] actually or constructively knows (as inferred from the [infringer's] conduct) that his actions constitute an infringement (citation omitted), or if the [infringer] acts with reckless disregard as to the possibility of the same." *Id*. (citing *Twin Peaks Prods., Inc.*, 996 F.2d at 1382). Here, the Court infers such willful knowledge from the Plaintiff's failure to prosecute this action and to defend the counterclaims. *Id*.; *see also Entral Group Int'l LLC,* 2006 WL 3694584, at *6 ("A[n infringer's] default may also be considered as evidence of willful infringement").

14

Prior to the Inquest, Defendant Field had requested an award of enhanced statutory damages in the amount of $150,000 per infringed work under 17 U.S.C. § 504(c)(2). Calculating the 142 photographs at issue times the $150,000 enhanced statutory amount per photograph yields a sum of $21.3 million. The Court finds this amount to be excessive and not warranted in the context of the facts of this case and expects that the Defendant would not disagree. In fact, at the Inquest, Defendant Field's counsel provided a chart entitled "Summary of Defendant's Damages" which indicated that Field is seeking $106,500 for the copyright infringement. *See* Inq. Demonstrative Exhibit 1. No evidence has been presented to show that the photographs appeared anywhere other than in the October 2007 issue of VOX Magazine and on the VOX website for a limited period of time. Field herself testified that the Festival paid her from $300 per photo up to $500 per photo for the photos that appeared in the Festival brochure. As noted previously with regard to the copyright statute, damages range between $750 and $30,000 for each infringed work. This Court finds $750 per photo to be a reasonable measure of damages here – notably, an amount higher than what Field received in payment for the photos which appeared in the Festival brochure. Applying that $750 figure to each of the 142 photographs infringed yields a sum of $106,500. Based upon the history of this litigation, the Court further finds that Plaintiff's conduct is more accurately described as reckless rather than wanton. The record reflects that Blue Moon went out of business some time ago, explaining to some degree, the abandonment of this action, including the defense of the counterclaims. Blue Moon's conduct, for purposes of the statute, is nonetheless "willful," and on that basis, I respectfully recommend to Judge Hurley that the $106,500 figure be enhanced to $150,000 in accord with the provisions of the Copyright Act.

In summary, this Court respectfully recommends to Judge Hurley that the following damages be awarded:

- Full page advertisement          $    6,245.00
- Gallery Show                   $   12,561.20
- Copyright Infringement         $ 150,000.00

                               Total:       $ 168,806.20

### C.     Costs and Attorneys' Fees

Defendant seeks an award of attorneys' fees in the amount of $150,408. *See* Declaration of Emily Abrahams, Esq., in Support of An Award of Damages and Attorneys' Fees ("Abrahams Decl.") at 2; Def.'s Mem. In Support of Award of Damages ("Def.'s Mem.") at 8. Section 505 of the Copyright Act allows, at the court's discretion, the prevailing party to recover costs and attorneys' fees. *See* 17 U.S.C. § 505. Further, a willful infringement supports an attorneys' fees award. *See Kepner-Tre-goe, Inc. v. Vroom,* 186 F.3d 283, 289 (2d Cir. 1999); *Entral Group Int'l v. Sun Sports Bar Inc.*, No. 05-CV-4836, 2007 WL 2891419 (E.D.N.Y. Sept. 28, 2007). Given the willful infringement of VOX/Blue Moon and its failure to participate in this action, an award of attorneys' fees and costs is appropriate here.[3]

---

[3]      The Court finds that an award of attorneys' fees is appropriate under the Copyright Act despite the fact that Defendant was represented *pro bono*. *See Vargas v. Transeau*, No. 04-CV-9772, 2008 WL 3164586, at *4 (S.D.N.Y. Aug. 6, 2008) (awarding attorneys' fees under the Copyright Act where party was represented *pro bono*). *Cf. Quinto v. Legal Times of Washington, Inc.*, 511 F. Supp. 579, 581 (D.D.C. 1981) ("It is wholly consistent with the congressional intent that the Copyright Act be privately enforced to award attorney's fees to a prevailing *pro se* litigant. To deny such a litigant attorney's fees solely on the grounds that he did not incur any liability to pay attorney's fees ignores the fact that a *pro se* must forego other activities in order to prepare and pursue his case."). Defendant's counsel cited three cases in support for the award of attorneys' fees to *pro bono* counsel. *See* DE 59, n.7. However, the cases cited by Defendant's

To determine what are reasonable attorneys' fees, this Circuit has historically implemented the lodestar method by examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Crescent Publ'g Group, Inc., v. Playboy Enters., Inc.,* 246 F.3d 142, 150 (2d Cir. 2001) (holding that in Copyright actions, "an objective measure such as the lodestar seems the most effective method in enabling parties to retain competent counsel"). However, in *Arbor Hill Concerned Citizens v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit determined that "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill*, 522 F.3d at 190. Further, the Second Circuit reasoned that "[w]hat the district courts in this circuit produce is in effect not a lodestar as originally conceived but rather a 'presumptively reasonable fee.'" *Id.* at 189.

The presumptively reasonable fee standard is predicated on the same basic analysis "by calculating the product of the hours reasonably expended and a reasonable hourly rate."[4] *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.,* No. 04-CV-2293, 2009 WL 5185808, at *4 (E.D.N.Y. Dec. 23, 2009); *see also McDaniel v. County of Schenectady*, 595 F.3d

---

counsel all concern the award of attorneys' fees to *pro bono* counsel in actions where counsel seeks to vindicate the civil rights of a party. As such, these cases are inapposite here. The Court also notes that the law firm has stated it will be donating any attorneys' fees award to the Chadbourne & Parke Foundation, which was created in 2001 to assist the victims of the terrorist attacks on the World Trade Center. *See* DE 61 ¶ 8.

[4] The difference between the two methods is that the lodestar method "would set the lodestar *and then* consider whether, in light of variables such as the difficulty of the case, it should adjust the lodestar before settling on the reasonable fee it was ultimately inclined to award." *Arbor Hill,* 522 F.3d at 187. However, the presumptively reasonable fee standard bears in mind *"all* of the case-specific variables . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 190.

411, 417 n.2 (2d Cir. 2010) ("While the *Arbor Hill* panel indicated its preference for abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method.").

Regarding the reasonable hourly rate portion of the presumptively reasonable fee standard, the Second Circuit has suggested that the district court consider "what a reasonable, paying client would be willing to pay" when setting a reasonable hourly rate.[5] *Arbor Hill,* 522 F.3d at 184. However, the Court notes this Circuit's adherence to the forum rule which states that district courts should generally use the prevailing hourly rates in the district where it sits. *See Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). The Second Circuit has since clarified that district courts "may use an out-of-district hourly rate – or some rate in between the out-of-district rate sought and the rates charged by local attorneys – in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill*, 522 F.3d at 191. The Second Circuit cautioned that "[w]e presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Id.* Nevertheless, "[t]his presumption may be rebutted – albeit only in the unusual case – if the party

---

[5]    The Second Circuit lists as relevant factors in determining what a reasonable, paying client would be willing to pay as "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation. *Arbor Hill,* 522 F.3d at 184.

wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances." *Id.*

To overcome the presumption in favor of the forum rule, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. New York City Transit Auth.,* 575 F.3d 170, 172 (2d Cir. 2009). In *Simmons*, the Second Circuit recently advised that

> [i]n determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise. A litigant cannot overcome the presumption through mere proximity of the districts, nor can a litigant overcome the presumption by relying on the prestige or "brand name" of her selected counsel. . . . The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result. . . . Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

*Simmons,* 575 F.3d at 175-76 (internal citation omitted).

Regarding the hours expended portion of the presumptively reasonable fee standard, a court must "examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." *Entral Group Int'l,* 2007 WL 2891419, *9. "In the Second Circuit, motions for attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done." *R Bar of*

*Manhattan, Inc.,* 919 F. Supp. at 661 (citing *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1160 (2d.

Cir. 1994)).  Moreover, any billed time which is unreasonable, excessive, redundant or

unnecessary should be excluded in the calculation.  *See Quaratino v. Tiffany & Co.,* 166 F.3d 422,

425 (2d Cir. 1999); *BMG Music,* 2007 WL 2089367, at *7.

      Defendant Field has been represented in this matter by Chadbourne & Parke LLP, a New

York City firm.  The contemporaneous billing records submitted by counsel show that services

were provided to Defendant Field for the period covering June 27, 2008 through June 13, 2010.[6]

Abrahams Decl., Ex. 5.  For defending this action and prosecuting her multiple counterclaims up

to the point of the default as well as moving for a default judgment, Defendant Field seeks

attorneys' fees in the sum of $150,408.  Abrahams Decl. at 2.

      In her Declaration, Defendant Field's counsel sets forth the work done and fees incurred

by her firm regarding this matter.  Annexed to the Abrahams Declaration are monthly time records

which account for every entry requested by Defendant Field.  Abrahams Decl., Ex. 5.   The

individuals involved in the representation were:  (1) Emily Abrahams, the lead attorney in this

case, who billed 145.8 hours to this matter, with an initial hourly billing rate of $435 and a final

hourly rate of $565; (2) a second attorney identified only with the initials "PT" who billed two

hours to this matter, with an hourly billing rate of $465; (3) a third attorney identified only with

the initials "MM" who billed 66.7 hours to this matter, with an hourly rate of $330; (4) a fourth

attorney identified only with the initials "SB" who billed 4.6 hours to this matter, with an hourly

---

[6]     These records do not include time expended by counsel for the Inquest hearing held on
June 30, 2010.  The Court also notes that the contemporaneous billing records show a total of
472.70 hours billed to this matter for a total of $179,537.50, although Defendant's request for
attorneys' fees as submitted is $150,408.00.

rate of $695; (5) a fifth attorney identified only with the initials "PW" who billed 126.8 hours to this matter, with an hourly rate of $345; (6) two attorneys identified only with the initials "LR" and "JM" who together billed a total of 21.3 hours to this matter, each with an hourly rate of $250; (7) four attorneys identified only with the initials "LH," "AH," "CW," and "KW" who together billed a total of 15.7 hours to this matter, with hourly rates between $185 and $275; and (8) an individual who appears to be a paralegal, identified only by the initials "LI" who billed 2.4 hours of this matter, with an hourly rate of $160. Abrahams Decl., Ex. 5. It should be noted that Defendant has provided no information setting forth the experience levels of the attorneys who billed time on this matter and so the Court is left to sort out this issue based on deductive reasoning.

### 1.    The Hourly Rate of Defendant's Counsel

As noted, the hourly rates charged by Chadbourne & Parke for the various attorneys working on this matter ranged from $250 per hour for apparently junior associates to $695 per hour presumably for a partner/senior associate, reflecting New York City billing rates. These are assumptions made by the Court since no explanatory information has been provided. The only Chadbourne & Parke attorney whom the Court is able to identify is Emily Abrahams who attended all Court appearances and was a very effective advocate for her client. According to the Chadbourne & Parke website, Attorney Abrahams graduated from law school in 2005 and was admitted to the bar in 2006. At the time this action was commenced in 2008, the Court concludes that Ms. Abrahams had been in private practice for two years. By the time this case was completed, she was presumably a fourth or fifth year associate at the firm. The website discloses that Ms. Abrahams is part of the commercial litigation group and that her practice focuses on

complex commercial litigation and arbitration, as well as intellectual property disputes. With this background established, the Court turns to the issue of an appropriate hourly rate for the attorneys involved in this action.

The Second Circuit's decisions in *Arbor Hill* and *Simmons* established a presumption in favor of applying rates from the district in which the case was filed. In order to apply out-of-district rates, even those of the Southern District, Defendant must overcome the presumption by experience-based, objective factors such as counsel's special expertise in litigating the particular type of case as well a particularized showing that the use of in-district counsel would produce a substantially inferior result, such as by establishing that no in-district counsel possessed such expertise. *See Simmons*, 575 F.3d at 175-76. Defendant's counsel has not addressed this issue at all in the fee application. In fact, Defendant provides no specific information which would establish that local counsel with the requisite experience were unwilling or unable to take the case, or, alternatively, that no in-district counsel possessed such expertise. Accordingly, this Court must apply Eastern District of New York rates to determine a reasonable hourly rate.

In 2007, one court in the Eastern District observed that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants." *Cho v. Koam Medical Services PC,* 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007). Two years later, in *Melnick v. Press,* No 06-CV-6686, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (decided several weeks after *Simmons* and taking that case into account), the court held that rates in the Eastern District vary from $200 to $375 per hour for partners and $100 to $295 per hour for associates. *Melnick,* 2009 WL 2824586, at *9. The Court notes that this

district has previously approved higher hourly rates in intellectual property matters as they require specialized knowledge, even when such actions were considered in a default setting. *See Microsoft Corp. v. Computer Care Ctr., Inc.,* 06-CV-1429, 2008 WL 4179653, at *14-15 (E.D.N.Y. Sept. 10, 2008) (approving hourly rate of $500 for a partner and $385 for an intellectual property associate with several years of experience)*; Entral Group International, LLC,* 2007 WL 2891419, at *10 (finding the rates of $540 for partner as well as $360 and $340 per hour for associates reasonable).

However, the *Microsoft Corp*. and *Entral Group* cases involved New York City counsel where this Court approved the hourly rates based upon the forum rule as it existed prior to *Arbor Hill* and *Simmons*. *See Microsoft Corp*., 2008 WL 4179653, at *15 (holding that "the hourly rates charged by [counsel], while on the high side, fall within the range awarded in New York City for cases of this kind"); *Entral Group Int'l,* 2007 WL 2891419, at *10 (finding that the rates are "reasonable and within the range of rates charged for copyright infringement cases in New York City"). Thus, the rates that this district approved and found reasonable at the time in *Microsoft Corp.* and *Entral Group* were actually those rates which were reasonable under Southern District standards.

Subsequent to *Arbor Hill* and *Simmons*, this district has to date considered the reasonable hourly rate issue in an intellectual property setting where a default has occurred in a few cases that this Court has been able to find.[7] In *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark*

---

[7]    Last year, in *Lyons Partnership, L.P. v. D & L Amusement & Entertainment, Inc*., 702 F. Supp. 2d 104 (E.D.N.Y. 2010), the court entered a default judgment against Defendant costume suppliers whom it found to have infringed Plaintiffs' copyright and trademark rights in popular children's television characters. The court found rates ranging from $425-440 hourly for partners to be reasonable, along with a rate of $260-270 for senior associates, $135-160 for junior

*Mgmt., Inc.,* No. 04-CV-2293, 2009 WL 5185808 (E.D.N.Y. Dec. 23, 2009), plaintiff's counsel,
located in the Southern District, sought reimbursement for the following hourly rates: a partner
with 44 years of intellectual property experience at $425-$450; an associate with six years of
intellectual property experience at $300-$325; and paralegals at $85-$90. *Koon Chun Hing Kee
Soy & Sauce Factory, Ltd.,* 2009 WL 5185808, at *5. After concluding that plaintiff did not
address whether the court should depart from the forum rule, the court nevertheless found
counsel's rates consistent with those previously awarded in this district. *Id.* However, court in
*Koon Chun*, to support the hourly rates of Plaintiff's counsel, relied in part on *Microsoft Corp.*
and *Entral Group.*

Within days of the Second Circuit's decision in *Simmons*, a magistrate judge in this
District issued a Report and Recommendation in an action brought under the Copyright Act by
various sound recording companies recommending that a default judgment be entered, that
Plaintiff be awarded statutory damages, costs and attorney's fees and that a permanent injunction
be issued. The district judge adopted the Report and Recommendation and directed the clerk to
enter judgment. *See Musical Productions, Inc. v. Roma's Record Corp.*, No. 05-CV-5903, 2009
WL 3052630, at *1 (E.D.N.Y. Sept. 23, 2009). Although *Simmons* is not discussed in that
decision, the magistrate judge observed that the hourly rates charged by Plaintiff's Manhattan
counsel "appear to be somewhat higher than the rates charged in this district." *Id.*, at *10. The
judge went on to state that a number of courts in the district have awarded attorney's fees "at
lesser rates of $200 to $300 for partners, $200 to $250 for senior associates, $100 to $150 for

_____

associates, and $75 for a legal intern/paralegal. *Id*., at *121. *Simmons* is not discussed in this
case.

junior associates and approximately $100 for paralegals" (citation omitted) while other courts "have concluded that these rates are outdated and have awarded fees at a higher rate" (citation omitted). *Id*. Finding that the Plaintiff had not adequately supported the hourly rates requested (*i.e.*, $425/hour for partner, $250/hour for senior associate, $150/hour for junior associate), thereby warranting a reduction of the fees, the magistrate judge discussed the deduction of a reasonable percentage of the hours claimed as a practical means of trimming a fee application and recommended a 25% reduction in the fees to be awarded. *Id.*

In the same time frame, another court in this district dealt with a software company's action for infringement of its copyrighted materials and trademarks used to serve businesses in the hospitality industry. *See Tu v. TAD System Technology, Inc.*, No. 08-CV-3822, 2009 WL 2905780, at *1 (E.D.N.Y. Sept. 10, 2009). In *Tu*, the court entered a default judgment, issued a permanent injunction, and awarded statutory damages, attorney's fees and costs. *Id.*, at *6-10. Applying *Simmons*, the court found that the fees requested ($475 hourly and $420 respectively for partners, $260 for associate in Chicago, and $525 hourly for partner, $395 for senior associate at local counsel's firm in the Southern District) were "significantly higher than those typically approved." *Id.*, at *10. The court also noted that the Plaintiffs had presented no evidence that attorneys within the Eastern District of New York would have produced a substantially different result from the one obtained by the Chicago firm retained by Plaintiffs in the case. *Id.* Taking these factors into account, the court awarded hourly rates of $375 for partners, $250 for senior associates, and $150 for junior associates. *Id.*

In essence, this Court is left with case law supporting higher rates in intellectual property cases with limited guidance as to what range of rates would be reasonable subsequent to *Arbor*

*Hill* and *Simmons*.  In light of these developments, this Court is constrained to recommend rates

at, or slightly above, the recent rates approved in this district.  Therefore, I recommend to Judge

Hurley that the following rates are reasonable in light of *Arbor Hill*, *Simmons* and the recent cases

in this district referenced above:  (1) Associate Emily Abrahams' rate be reduced to $325; (2) the

rate of associate "PT" be reduced to $250; (3) the rate of associates "MM" and "PW" be reduced

to $210; (4) the rate of senior associate/partner "SB" be reduced to $400; (5) the rate of junior

associates "LR" and "JM" be reduced to $175; (6) the rate of the "Miscellaneous" other junior

level associates be reduced to $175; and (7) the rate of paralegal "LI" be reduced to $90.

### 2. *Time Expended by Defendant's Counsel*

As noted, Attorney Abrahams was the primary attorney responsible for handling this

matter.  In fact, the senior associate/partner "SB" billed only 4.6 hours in total.  *See* Abrahams

Decl., Ex. 5.  Defendant's counsel seeks an award of fees for a total of 385.3 hours for a matter

that was initiated in March 2008.  Although the issues raised in this case did not involve novel

areas of the law, the attorneys were still required to confer with their client regarding the defenses

and potential claims, draft cease and desist letters as well as an Answer and eight Counterclaims,

make multiple court appearances based on the recalcitrance of the Plaintiff and its principal,

prepare a sanctions motion, formally move for a default judgment, and prepare for and attend a

formal Inquest hearing at which the Defendant testified.  After a review of the invoices submitted

by Defendant's counsel, the Court finds several areas which reflect unreasonable, excessive or

unnecessary time that should be excluded.  For example, the Court finds that 53.3 hours billed for

preparation of the Answer (containing three pages of general denials in 41 paragraphs and five

affirmative defenses) and Counterclaims (additional ten pages) in a firm that engages in

intellectual property work is not reasonable. The Court understands that the firm undertook this case on a pro bono basis which may account for the number of attorneys doing work on the matter at various times. However, the Court finds that a reduction to 20 hours for preparation of the pleading here is reasonable.

Likewise, the Court finds the entry of "MM" reflecting 4.1 hours for "scheduling hearing" on August 28, 2008 to be non-compensable. This Court held the Initial Conference in this matter on August 28, 2008 and the conference was attended by Attorney Abrahams who billed 4.5 hours for that purpose. Because this was primarily a scheduling conference, there was no need for two attorneys to bill for this time. In addition, the attendance of "PW" at the January 19, 2009 hearing on the motion of Plaintiff's counsel to withdraw as counsel (1.5 hours billed) and the March 18, 2009 order to show cause hearing (6.1 hours billed), although perhaps desirable from an experience perspective, were equally unnecessary in light of Attorney Abrahams' attendance at both hearings. The Court therefore has deducted 7.6 hours billed for that time by "PW."

Finally, attorney "PW" also billed 49.2 hours for work involved in preparing a sanctions motion pursuant to Rule 37 – a motion that was never filed. The Court finds this total to be excessive, particularly when taking into account that Attorney Abrahams was also making billing entries dealing with this motion. The Court is reducing this number to 20 hours. The reduction of hours for "MM" and "PW" have been accounted for in the totals appearing on the chart referenced in subsection 3 below.

Although there is some duplication in the entries of the "Miscellaneous" attorneys toward the end of the case, the Court is not reducing these hours since Defendant's counsel did not submit billing for the attendance at and conduct of the Inquest hearing.

27

Accordingly, I find that 311.1 hours expended by Defendant's counsel are properly included in calculating the attorneys' fee award.

### 3.     *Total Attorneys' Fees*

Based on the above analysis, I recommend to Judge Hurley that Plaintiff be awarded $81,469, as broken down in the following chart:

| Attorney | Total Hours Awarded | Rate Awarded | Total Fee Awarded |
|---|---|---|---|
| Emily Abrahams | 145.8 | $325 | $47,385 |
| PT | 2 | $250 | $500 |
| MM | 29.3 | $210 | $6153 |
| PW | 90 | $210 | $18,900 |
| SB | 4.6 | $400 | $1,840 |
| LR | 16.5 | $175 | $2,887.50 |
| JM | 4.8 | $175 | $840 |
| LH, AH, CW, KW | 15.7 | $175 | $2747.50 |
| LI | 2.4 | $90 | $216 |
| **TOTAL ATTORNEYS' FEES AWARDED** | | | **$81,469** |

### D.     **Injunctive Relief**

Defendant also seeks to enjoin VOX/Blue Moon from using, reproducing or displaying Defendant Field's photographs in any form. *See* Ans. ¶¶ 114-119.  As an initial matter "[a] court may 'issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" *Dunkin' Donuts Inc. v. Peter Romanofsky, Inc.,* No. CV-05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (quoting *King v. Nelco*

*Indus., Inc.,* No. 96-CV-4177, 1996 WL 629564, *1 (E.D.N.Y. Oct. 23, 1996)); *BMG Music*, 2007 WL 2089367, at *5.

Further, Section 502(a) of the Copyright Act provides:

> Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent a restrained infringement of a copyright.

17 U.S.C. § 502(a). Thus, to obtain a permanent injunction, the moving party must establish that "1) absent injunctive relief, it will suffer irreparable harm, and 2) actual success on the merits." *BMG Music,* 2007 WL 2089367, at *5. Moreover, permanent injunctions will only be given where "there is a substantial likelihood of future infringements." *Boisson v. Banian Ltd.* 280 F. Supp. 2d. 10, 15 (E.D.N.Y. 2003).

First, to make out a *prima facie* case of copyright infringement, a party must establish ownership of a valid copyright and that the defendant violated an exclusive right conferred by the ownership. *See Feist Publ'ns, Inc., v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991); *Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 139 (2d Cir. 1992). Here, Defendant is the copyright owner to the photographs at issue and has established that Plaintiff used the copyrighted photographs without the proper permission or authority to do so in the October 2007 issue of VOX Magazine and on the VOX website. Thus, Defendant has established actual success on the merits. Moreover, irreparable harm is presumed where a party has established a *prima facie* case of copyright infringement. *See Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch,* 312 F.3d 94, 96 (2d Cir. 2002); *U2 Home Entm't Inc. v. Bowery Music City, Inc.,* No 03 Civ. 8909, 2003 WL 22889738, at *1 (S.D.N.Y. Dec. 8 2003). Further, it is clear from Plaintiff's ultimate failure to participate in this action that Plaintiff has no intention of following the law and will

likely continue to violate Defendant's copyrights without an injunction. Accordingly, I am respectfully recommending to Judge Hurley that Defendant's request for an injunction be granted, thereby preventing Plaintiff from using, reproducing or displaying Field's photographs in any form without prior authorization. *See BMG Music*, 2007 WL 2089367, at *5 ("The scope of injunction may include not only the Copyrighted Recordings [at issue] but all copyrighted sound recordings owned or controlled by plaintiffs.").

## IV.    CONCLUSION

For all of the foregoing reasons, I respectfully recommend to Judge Hurley that damages be awarded to the Defendant as follows:

| | | |
|---|---|---|
| A. | For breach of contract and copyright Infringement: | $168,806.20 |
| B. | Attorneys' Fees: | 81,469.00 |
| | TOTAL: | $ 250,275.20 |

Further, I recommend to Judge Hurley that the Plaintiff be permanently enjoined from using, reproducing or displaying Field's photographs in any form or otherwise infringing any or all of those photographs.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Arthur D. Spatt, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Counsel for Defendant is directed to serve this Order on Plaintiff forthwith and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
        April 11, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge